OYERTON, J.
 

 This is a suit for slander of title. Plaintiff alleges that his brother-in-law, W. Y. Dawson, and others, named by him, all of whom are children or grandchildren of Mrs. S. A. Dawson and O. H. P. Dawson, both of whom are now deceased, are slandering his title to a 32/35 interest in certain real property, known as the state line place, located near Haynesville, La., and to a lot and residence, occupied by Mrs. S. A. Dawson during her lifetime (which we shall refer to as the “home place”), by claiming in said property a
 
 1/9
 
 interest each, and by those of the grandchildren of Mrs. S. A. Dawson, who are defendants herein, claiming an undivided 1/45 interest each therein.
 

 Defendants, for answer, admit the slander, but aver, in substance, that the deed under which plaintiff claims to have acquired their interest in said property was not, in fact, intended to be translative of property, but was given merely as security, in the form of a sale, to protect plaintiff in assuming for W. Y. Dawson certain indebtedness due by the latter to a bank in Haynesville, of which Dawson was president; that at the time the deed was executed, a counter letter was given by plaintiff, showing the nature of the transaction and the rights of' all parties concerned ; that, at the time of the execution of the foregoing instruments, or shortly prior thereto, W. Y. Dawson deeded to plaintiff a half interest in certain real property, located in Claiborne parish, known as the Taylor place,
 
 *807
 
 and in addition thereto, certain lots, situated in Haynesville, which we shall refer to as the Haynesville lots; that the purpose of this transfer, as understood and agreed to between the parties thereto, was that plaintiff would sell the property conveyed to him by Dawson, and would, after paying a mortgage, on the Taylor place, amounting to $1,150, apply the balance on the indebtedness, to be assumed by him for W.
 
 Y.
 
 Dawson, and that, if plaintiff elected to keep the property he would credit Dawson with the full value thereof; that plaintiff has sold the Haynes-ville lots; that the proceeds of the sale of said lots, and the revenues derived by him from the Taylor place and from the home and state line places have been far more than sufficient to pay the indebtedness which he assumed; that, therefore, W.
 
 Y.
 
 Dawson is entitled to recover the Taylor place, and that he and the remaining defendants are entitled to the cancellation of the deed to the home and state line places, and that each is entitled to judgment for' his proper share of the remainder of said revenues, and W. T Dawson to the balance, if any, of the money derived from the sale of said lots. Certain relief is also asked for, in the alternative, which we find it unnecessary to mention, in outlining the issues involved.
 

 The recofd discloses that W.
 
 Y.
 
 Dawson, who was president of the Haynesville State Bank, was indebted to the bank in the sum of $6,512, represented by four notes, each for the sum of $1,628, dated December 20, 1910, signed by W.
 
 Y.
 
 Dawson as maker and by plaintiff as surety or accommodation maker. These notes bore 8 per cent, per annum interest from date, and were made payable, respectively, 1, 2, 3, and
 
 4
 
 years .after date. W. T. Dawson was anxious that all of these notes be paid. In .November or December, 1911, he went to plaintiff and requested him to pay them. Shortly prior thereto, he transferred to plaintiff the Haynesville lots and his half interest in the Taylor place for $2,350, plaintiff to pay, which he did,- a mortgage amounting to $1,187 on Dawson’s interest in the latter property. The consideration of $2,350 for the Haynes-ville lots and for the equity in the Taylor place was not paid to Dawson, but was withheld by plaintiff, to be applied on the notes mentioned above. When Dawson went to plaintiff to see him with reference to the payment of the notes, the latter consented to assume and pay all of them for him, provided his mother-in-law, Mrs. S. A. Dawson, who was then alive, and the heirs of her deceased husband would deed to him the state line and home places, by a deed absolute in form, plaintiff to give a counter letter and to permit Mrs. S. A. Dawson to retain possession of the property and to collect the rents and revenues thereof for a period of three years, but, in the event of her death before the expiration of that period, the rents and revenues of the property from the time of her death to go to plaintiff. Dawson undertook
 
 to
 
 obtain the deed. Later, he returned with one, by private act, signed by Mrs. S. A. Dawson and the heirs of her deceased husband, excepting, of course, plaintiff’s wife. This deed purported, on its face, to convey to plaintiff, by absolute title, for a recited consideration of $1,750 cash, the home and state line places. Plaintiff accepted the deed, and, at the same time, signed with Mrs. S. A. Dawson an instrument reading as follows:
 

 “This agreement, entered into this 20th day of December A. D. 1911, between Mrs. S. A. Dawson of Haynesville, La., and Dr. S. O. Waller of same residence, witnesseth that the said Mrs. Dawson, together with her heirs, have this day made deed to S. O. Waller at a cash consideration of $1,750.00,
 
 to the
 
 State Line place consisting of about 170 acres of land, and one dwelling house and lot in Haynesville, La.; and it is agreed and understood that the said S. O'. Waller is to let the said Mrs. S. A. Dawson retain possession of said places, collect rent, etc., for a term of three years, and at the expiration of three years, if the said Mrs. S. A. Dawson or W.
 
 Y.
 
 Dawson shall have paid as much as $5,-000 back to the said S. O. Waller, then the said S. O. Waller will make deed back to the said
 
 *809
 
 Mrs. S. A. Dawson or heirs; otherwise the places mentioned shall belong to the said S. C. Waller, and in case the said Mrs. S. A. Dawson dies before the .expiration of three years the rents shall go to the said S. C. Waller.”
 

 Mrs. S. A. Dawson remained in possession of the home and state line places, collecting rents from the latter place, under the foregoing instrument, until her death, which occurred in January or February, 1914, which was nearly a year before the period for redemption. fixed in that instrument, had expired. Immediately after.her death, plaintiff took possession of the places and collected the rents, rendering an account to no one, but retaining them as his. No protest was made by any one, when plaintiff took possession, and not until February, 1916, when. Mrs. Collier, plaintiff’s sister-in-law and one of the defendants in this suit, complained of the manner in which she considered plaintiff had treated her and her coheirs. In a. letter written by plaintiff to Mrs. Collier in reference to this complaint, plaintiff refers to the deed, given him to the- state line and home places, as being one taken for’ security, saying:
 

 “I only took it as security. If Will (referring to W. Y. Dawson) had fulfilled his part of the contract, the property would have ’gone back to the heirs.”
 

 Defendants rely strongly upon the foregoing statement made by plaintiff.
 

 Opinion.
 

 On the trial defendants offered parol evidence to show that the Taylor place and the Haynesville lots, these being the properties that were transferred by W. Y. Dawson tc plaintiff, were placed, by the deed transferring them, in plaintiff’s name, merely-for the purpose of enabling plaintiff to sell them and to apply the proceeds to the payment of the indebtedness, paid or to be paid by plaintiff, and hence that the proceeds of the sale of such of these properties as plaintiff sold, as well as the revenues collected by him from the Taylor place, this being the only one of these properties that produced revenues, should be applied on that indebtedness for the reason that plaintiff did not, in fact, acquire the ownership of the lands which that deed, on its face, purported to convey to him.
 

 Plaintiff objected to the foregoing evidence and to all parol evidence that might be offered to vary or contradict the instrument by which Dawson transferred to him the Taylor place and the Haynesville lots. The objection was made general; that is, it was made to apply to all parol evidence on the question that might be offered, and was overruled. It should have been sustained. The instrument by which W. Y. Dawson transferred- the property is a sale absolute in form. It is not alleged that there was error or fraud in its confection or execution. Parol evidence was clearly not admissible to show that the instrument was not what it purported to be. McKenzie v. Bacon, 40 La. Ann. 157, 4 So. 65; Campbell v. Cook, 151 La. 267, 91 So. 731; Harris v. Crichton, 158 La. 358, 104 So. 114.
 

 With the foregoing objection sustained, it at once becomes clear that W. Y. Dawson conveyed absolute title by the deed executed by him to the Haynesville lots and to his half interest in the Taylor place to plaintiff, and hence is not entitled to be credited on the indebtedness which plaintiff undertook to pay for him with the amounts for which plaintiff sold the lots, or with the revenues derived by plaintiff from the Taylor place, for those proceeds and revenues were not his, but belonged to plaintiff, though, as we shall see, Dawson is entitled to credit on that indebtedness for the consideration of $2,300 for which he conveyed these properties to plaintiff. In fact, defendants, including Dawson, do not discuss this phase, of the ease in their brief, save to claim credit for the $2,300 mentioned, and expressly concede therein that the indebtedness
 
 *811
 
 paid by plaintiff is not entitled to be credited with the revenues
 
 of
 
 the Taylor place,
 

 The serious question in the case relates to the status of the state line and home places. These properties, as we have seen, were deeded to plaintiff by Mrs. S. A. Dawson and the heirs of her deceased husband for a consideration, recited as being $1,750 cash, by an act, which, upon its face, purports to transfer absolute title. However, as we have seen, at the time plaintiff accepted this deed he signed an instrument to the effect that, if he should be paid as much as $5,000 within three years from the date of the instrument, he would deed the property back to Mrs. Dawson
 
 or
 
 her heirs, evidently using the word “or,” appearing'between “Dawson” and “her heirs,” in its loose conjunctive sense, as the equivalent of “and” (for which use, see 29 Cyc. pp. 1505, 1506), and the word “heirs”to refer to the remaining vendors, as it is patently used elsewhere in the instrument, in referring to the deed that had been executed, as one executed by “Mrs. S. A. Dawson together with her heirs.” In our opinion, the deed, when read in connection with the instrument or counter letter given at the time it was accepted, is one which purports to convey these lands subject to the right of re* demption.
 

 However, defendants contend, as we have substantially said, that, since Mrs. Dawson retained possession of the property until her death, and since the price named in the deed for it was vile, the conveyance should be regarded merely as an act of security or mortgage, and that, since it was merely such, plaintiff was not entitled to the rents collected by him from the property during his possession thereof, and since these rents, together with the consideration of $2,300, stated in the deed from W. Y. Dawson to plaintiff, were more than sufficient to pay the indebtedness due, or the $5,000 stated in the countei* letter, that they are entitled to have the deed or act of security canceled. ;
 

 With reference to a vendor’s remaining in possession after executing an act with the right of redemption, and with reference to the effect of á vile price in such sales, it was said in Marbury v. Colbert, 105 La. 467, 470, 29 So. 871, 872, that:
 

 “We hold that redeemable sales of immovable property, unaccompanied by the delivery of the thing sold, will be considered, as between the parties, in the absence of evidence to the contrary, as mere contracts of security, and either party to the contract is at liberty to maintain this position.
 

 “A sale which stipulates the equity of redemption — vente a l-emere — passes title to the purchaser, but to this end it is necessary that the vendee should give a real and reasonably adequate consideration, and take actual possession of the property, or else that such explanar tion be forthcoming-, when required, of the continued possession of the vendor as excludes the idea of his still existing ownership.”
 

 In Latiolais v. Breaux, 154 La. 1006, 98 So. 620, after citing Butler v. Marston, 145 La. 41, 81 So. 749, to the effect that, “except as throwing light on what was probably the intention, of the contracting parties, inadequacy of price is no more injurious to a redemption sale than to an out and out sale,” and after citing Bonnette v. Wise, 111 La. 855, 35 So. 953, to the effect that where the purchaser took actual possession of the property, mere inadequacy of the price, of itself, would not alone suffice to convert a redeemable sale into a simple contract of security, and that the remedy in such cases is by action of lesion, where one lies, and after citing Bagley v. Bourque, 107 La. 395, 31 So. 860, to the effect that, to state a cause of action to have a redemption sale declared a contract of security, plaintiff must allege that the purchaser .never took actual possession, it was said, to quote from the syllabus, which correctly states the ruling made, that:
 

 ; “The one test by which to determine whether a contract evidences a real sale with right of .-edemption, or a mere contract of security, is whether the purchaser has gone into actual posj session.”
 

 
 *813
 
 In the case at bar, Mrs. Dawson remained in actual possession of the property, enjoying the fruits thereof, until her death, which occurred nearly a year before the period for redemption expired. This the counter letter gave her the right to do. Immediately after her death, plaintiff, under his deed and the counter letter, went into possession of the property, collected the rents which the counter letter authorized him to do, accounting to no one for the revenues, and it was not until two years later that any one complained, hut to all appearances all concerned acquiesced. It therefore cannot be said that possession of the property continued in the vendors or in any of them, even during the period for redemption. The fact that plaintiff was permitted to go into Xiossession without the raising of any objection at the time, nor until some time later, .and the fact that the counter letter XJrovides that, should Mrs. Dawson die before the expiration of the period for redemption, the rents should go to plaintiff shows that it was the intention of the vendors to convey title, subject to the right of redemption, and not merely to secure plaintiff by a contract having the effect of a mortgage or other species of security. It is true that in a letter to Mrs. Collier plaintiff said that he took the property only as security, and, had Dawson fulfilled his contract, that the property would have gone back to the heirs. However, we do not attach great imI>ortanee to that statement, under the facts stated. Any laymen, it may be observed, might refer to a sale with the right' of redemption as a contract of security. The fact that plaintiff took possession immediately after Mrs. Dawson’s death shows that he regarded the sale as something more than an act of security.
 

 As relates to the consideration for the sale with the right of redemption, the following clearly appears to us, notwithstanding some confusion in parts of the evidence, to be the facts. The $2,300 for which Dawson conveyed to plaintiff the Haynesville lots and his half interest in the Taylor place was retained, as we have said, by plaintiff, to be applied and was applied by him on the indebtedness of $6,512 due by Dawson. Since plaintiff’s evidence negatives the idea that any interest was paid by him in settling that indebtedness, the payment of the foregoing sum left a balance of $4,212. The assumption and payment for Dawson by plaintiff of that balance constituted the true consideration for the redemption deed, the consideration of $1,750 therein recited being merely a fictitious one. The difference between the $4,212 and the $5,000, fixed in the counter letter as the amount necessary to redeem, was evidently intended to cover interest for the three years allowed for redemption, which, at a rate not much over 6 per cent, per annum, will make the amount of that difference. The'value of the property, at the time the redemption deed was made, did not exceed' $4,212, the true consideration paid for it. Hence it cannot be said in this instance that the consideration was inadequate.
 

 During the entire period for redemption, and for that matter even afterwards, nothing was paid on the $5,000 necessary to redeem. The consideration of $2,350 for the Taylor place and Haynesville lots was paid on the indebtedness of $6,512, leaving the balance, the payment of which by plaintiff constituted the consideration for the sale with the right of redemption. As to the rents and revenues which plaintiff seeks to credit against the amount necessary to redeem, the sale or conveyance being a real one with the right of redemption and not a mere act of security, the rents and revenues of the property conveyed belonged to plaintiff from the" time he went into possession and collected them. Smith’s Executor v. Dwight, 10 La. Ann. 691. Moreover, by the terms of the counter letter.
 

 
 *815
 
 plaintiff,.from the time of the death of Mrs. Dawson, which was the time he began collecting the rents and revenues, was entitled to them.
 

 The trial court rendered judgment for defendants in this suit, decreeing them to be the owners of a % interest in the land described in the sale with the right of redemption, and ordering them placed in possession upon paying plaintiff $6,512, with 8 per cent, per annum interest from December 20,1911, less $2,820 revenues collected by him from said property up to and including the year 1922. In our opinion, this judgment is erroneous.
 

 For the reasons assigned, the judgment appealed from is annulled and set aside, and it is now ordered, adjudged, and decreed that plaintiff, in this suit for slander of title, have and recover judgment against the defendants therein, rejecting their demands and confirming plaintiff’s title, defendants to pay the costs in both courts.