147 So. 697

**FOSTER v. CARNES et al.**

No. 31681.

March 27, 1933.

E. F. Gayle and C. V. Pattison, both of Lake Charles, for appellant.

Chappuis & Chappuis, of Crowley, and McCoy, Moss & King, of Lake Charles, for appellees.

O'NIELL, Chief Justice.

On the 4th of January, 1928, Claude E. Foster sold to C. E. Carnes two tracts of land, one having an area of 320 acres and the other an area of 80 acres. Foster resided on the larger tract, and cultivated both tracts as rice farms. The price stipulated in the deed was $750, which Carnes paid in cash, plus $6,597.50 which Foster owed to the Federal Land Bank, and which was secured by a mortgage on the lands, and the payment of which Carnes assumed, and plus the taxes for 1927, amounting to $247.26, the payment of which also Carnes assumed. The total price, therefore, was $7,594.76. It appears that Foster owed the Rice Growers' Credit Association a balance for advances made to

him by the association for the cultivation of the farms in 1927. Carnes was vice president of the Rice Growers' Credit Association; and it appears that nearly all, if not quite all, of the $750 said to have been paid in cash went to pay the debt due to the credit association.

As one of the considerations for the sale, Carnes gave Foster a counter letter, dated January 4, 1928, addressed to him, and being as follows:

"You have this day conveyed to me the following described land, to-wit: * * *

"The consideration being Seven Hundred fifty and no/100 ($750.00) dollars cash, and the assumption of the 1927 taxes, also the assumption of the payments due to the Federal Land Bank, of New Orleans, La., on the mortgage dated October 13, 1922.

"Now, therefore, this is to allow you the privilege of purchasing, redeeming or selling said land at any time before November 1st, 1928, providing youu reimburse me for whatever amount you may owe me, plus interest at 8 per cent per annum, plus $100 expenses, and upon the payment of same to me or my heirs the said land will be reconveyed to you or any one you designate.

"It is also understood and agreed that this is only an option, and if I have an opportunity to sell said land to a third party the privilege will be extended to you, said Foster, to repurchase said land at the same price and terms offered by said third party."

On the 3d of November, 1928, Foster having failed to redeem the property, Carnes sold a part of it to Alcide Ardoin, and, on the 6th of December, 1928, sold the remaining part to Levander Le Bleu. Foster's residence was on the part of the land that Ardoin bought.

At the time of the sale, Carnes wrote to Foster requesting him to deliver possession to Ardoin within the next week; and, on the 7th of November, Foster wrote to Carnes, acknowledging receipt of the notice, and requesting Carnes to sell to him a certain part of the land, having an area of about 80 acres, on the south side of the road. Carnes replied that he had offered that tract to another party, but that, if the transfer should not be made, he would be pleased to sell the land to Foster if proper arrangements could be made. On the 15th of November Carnes wrote to Foster that Ardoin had reported to him (Carnes) that Foster had failed to give Ardoin possession of the property; and, in the letter, Carnes demanded that Foster give Ardoin possession within the next week, and said that otherwise he would have Foster removed by legal proceedings. Thereupon, and without protest, Foster delivered possession to Ardoin. About three weeks later Le Bleu went into possession of the land that he had bought from Carnes.

This suit was filed by Foster against Carnes, Ardoin and Le Bleu, in May, 1930—about a year and a half after Foster had given up possession of the property.

The purpose of the suit is to annul the sale from Foster to Carnes and the sales from him to Ardoin and Le Bleu, on the ground, primarily, that the sale from Foster to Carnes was not in reality a sale, but only a pignorative transaction, and, in the alternative, that there was lesion beyond moiety; and, in the alternative, the plaintiff prayed that, if the sales by Carnes to Ardoin and Le Bleu should not be annulled, then that Carnes should be condemned to pay to plaintiff an

amount equal to the difference between the price at which Carnes had bought the property and the price at which he had sold it to Ardoin and Le Bleu. The district court gave judgment for the defendants, rejecting the plaintiff's demands. He has appealed from the decision.

 Our opinion is that the case is controlled by the ruling in Latiolais v. Breaux, 154 La. 1006, 98 So. 620, 621, which was cited with approval in Waller v. Dawson, 162 La. 812, 111 So. 170. In Latiolais v. Breaux the court reviewed all previous decisions on the subject of the effect of a failure of the buyer to pay an adequate price, and of his failure to take possession of the property, in the case of a sale with the right of redemption; and the court said:

"From the foregoing it results that the title of the purchaser is perfected by the delivery of actual possession. If that delivery takes place before the delay for redemption has expired, the vendor, of course, preserves his right of redemption. But if the vendor delivers the property after the delay for redemption has expired, obviously the sale then becomes absolute. By such delivery the vendor acknowledges that the thing belongs to the purchaser, and he cannot thereafter be heard to deny the latter's title thereto."

What we have said has reference to the sale made by Foster to Carnes. As to the sales made by Carnes to Ardoin and Le Bleu, respectively, the counter letter which Foster held, being unrecorded, had no effect. Rev. Civ. Code, arts. 2239 and 2266.

Foster, as a witness in the case, sought to destroy the effect of his having given up

possession of the property by saying that he became irritated because he thought that the Rice Growers' Credit Association was conspiring with the Federal Land Bank; and that he had no means with which to employ an attorney. Against that is the circumstance that Foster made no complaint about his transactions with Carnes until a year and a half after he (Foster) had given up possession of the property. It is argued, in his behalf, that it was through ignorance that he gave up the property; but the record does not show that he had less than ordinary intelligence. He was not well educated, but could read and write, and was, apparently, competent to manage his affairs.

 Referring now to the plaintiff's alternative demand, to have the sale to Carnes annulled for lesion beyond moiety, we agree with the district judge that the evidence does not sustain the allegation that the property was worth twice as much as the price for which it was sold to Carnes. Aside from the fact that the right of redemption was deemed to be worth something in the way of a consideration for making the sale, the property would have had to be worth more than $15,189.52 to be worth more than twice as much as Foster sold it for. Some of the witnesses for the plaintiff estimated the value of the property at $35 to $40 per acre, or $14,000 to $16,000 for the 400 acres; but other witnesses estimated the value much lower. The fact that the plaintiff could not borrow as much as $7,700, plus 8 per cent. interest thereon, with which sum he had the right to redeem the property within the period of ten months, is sufficient proof that the value of the property was not near $15,000 at the time of the sale.

Our conclusion, therefore, is that the judgment appealed from is correct.

The judgment is affirmed.