ROGERS, Justice.
 

 Mrs. Ollie H. Akard, as owner, and Walter B. Chandler, as mineral lessee, instituted a petitory action, claiming ownership of ten acres of land situated in the Shreveport Oil Field. A correlative claim is for the reformation of the deed from-
 
 *761
 
 which plaintiffs deraign their title. Defendants aver that the deed was an act of security only and that the amount secured had been repaid.
 

 The court below rendered judgment, rejecting the plaintiffs’ demand for the reformation of the deed, recognizing plaintiffs as owners of the property specifically described in the deed, recognizing defendants as the owners of property not specifically described in the deed, and rejecting defendants’ demand for a judgment decreeing the deed to be an act of security which had been satisfied. The plaintiffs and the defendants have appealed.
 

 The record shows that on December 28, 1875, Isaac Bush acquired from Robert B. Patterson, together with other property, a tract of land described as follows: “Ten acres of land, square in shape, being ten chains by ten lying in the northeast corner of the Northeast Quarter of the Southeast Quarter of Section 26, Township 18 North, Range 14 West,” in Caddo Parish.
 

 Subsequently, three transactions involving the conveyance and re-conveyance of the quarter quarter section involved in this suit .were had between Bush and Patterson. As a result of.these transactions, Isaac Bush, on February 16, 1882, became the owner of ten acres of land, more or less, lying north of Cross Bayou in the Northeast Quarter of the Southeast Quarter of Section 26, Township 18, Range 14, in the Parish of Caddo.
 

 On December 14, 1888, Isaac Bush executed an act of sale, with the right of redemption, transferring certain lands to James Heffner. On November 3, 192l2, Sally Bush and Corinne Bush Patterson, alleging themselves to be the widow in community and sole heir of Isaac Bush obtained an ex parte judgment in the First Judicial District Court, Parish of Caddo, sending them into possession of the interest of Isaac Bush “in that part of the Northeast Quarter of the Southeast Quarter of Section 26, Township 18, Range 14, lying north of Cross Bayou,” together with certain other property, situated in Section 25 of the same township.
 

 James Heffner died in 1904, his wife, Eliza Jane Heffner, having predeceased him, and his property was inherited by five daughters of the marriage, of whom Mrs. Ollie H. Akard was one. Subsequently, Mrs. Akard acquired from her sisters the interest owned by them in the property. In 1938, Mrs. Akard executed a mineral lease to Walter B. Chandler, and subsequently, in the early part of 1939, after the discovery of oil in the Shreveport Field, she executed a second lease, including certain other property not involved in this suit which, through error, had been omitted from the first lease. This error was discovered as the result of an examination of title which was made at that time, and an action of jactitation was filed in the First Judicial District Court in the month of April, 1939. This suit was dismissed for want of necessary corporeal possession,, after which the present suit was filed.
 

 On its face, the instrument on which this suit is based evidences a sale to James
 
 *763
 
 Heffner by Isaac Bush and the obligation of Heffner not to sell the property for a period of twelve months from the date of the instrument and to reconvey the property to Bush on payment of the recited purchase price. Defendants aver, however, that the instrument was “a pignorative contract, or act of security given to-secure the price of two horses and a wagon which the said James Heffner sold to said Isaac Bush”; that the price mentioned in the instrument was a vile price, less than one-fourth the actual value of the property; that after the execution of the deed, Isaac Bush remained in possession of the property up to the time of his death, and subsequent thereto the defendants continued to possess and occupy the property. Defendants also aver that the purchase price set forth in the deed had been repaid to Heffner, and if not paid by defendants, then, in the alternative, Heffner and his heirs had received from revenues and transfers of portions of the property more than the price set forth in the instrument. Defendants further aver, in the alternative, that if the instrument was not one of security and the property was not redeemed and plaintiffs had not received sufficient revenues to work its redemption, that plaintiffs, by instituting suit to reform the contract, have reinstated the original •contract, and defendants are entitled to redeem the property and that plaintiffs should be ordered to account for all funds ■and revenues received therefrom.
 

 The leading cases on the subject of sales with the right of redemption are Marbury v. Colbert, 105 La. 467, 29 So. 871, and Latiolais v. Breaux, 154 La. 1006, 98 So. 620, 621.
 

 In the Latiolais case, after reviewing the Marbury case and a number of other cases on the subject, the court announced the rule, when a vendor remains in possession after executing a deed with the right of redemption and when the sale is made for a vile price, to be as follows: “From the foregoing it results that the title of the purchaser is perfected by the delivery of actual possession. If that delivery takes place before the delay for redemption has expired, the vendor, of course, preserves his right of redemption. But if the vendor delivers the property after the delay for redemption has expired, obviously the sale then becomes absolute. By such delivery the vendor acknowledges that the thing belongs to the purchaser, and he cannot thereafter be heard to deny the latter’s title thereto.”
 

 The Latiolais case was cited with approval in Waller v. Dawson, 162 La. 804, 111 So. 170, and in Foster v. Carnes, 177 La. 99, 147 So. 697. In the Foster case the court quoted the above language in Latiolais v. Breaux, holding that it was the law of this State.
 

 The primary question to be determined in this case is whether James Heffner obtained possession of the property after the delay for redemption had expired. If he did, then under the foregoing rule the questions raised by defendants as to whether the transaction between Heffner and Bush was a pignorative contract or an act of security, and whether the transfer
 
 *765
 
 was made for an adequate price must be resolved adversely to defendants’ contentions.
 

 The trial judge assigned only oral reasons for his judgment. However, from the fact that his judgment was in favor of plaintiffs and against defendants, it is obvious that he determined the disputed question of possession in favor of plaintiffs. We are not convinced that we should disturb his judgment.
 

 The evidence in the record discloses that James Heffner and his daughter, Mrs. Ollie H. Akard, performed certain acts of ownership, and that they paid all the taxes assessed against the property.
 

 G. D. Seay, a native and lifelong resident of Shreveport, was the son-in-law of James Heffner. He testified that he handled Heffner’s property when he was ill or absent from the city. The witness also testified that, for account of Heffner, he collected rent for the property from Isaac Bush at various times, particularly between the years 1892 and 1900.
 

 The testimony of Mrs. Akard, who resides in the State of Colorado, wás taken by deposition. Her testimony shows that she dealt with the property through local agents. Mrs. Akard mentioned their names and the years they acted for her. These agents were McCloud & Hester in 1904; Robert Emery and W. S. Denis in 1905; Russell P. Moore, up to 1925; Mr. Prudhomme and Bennie Smith from 1925 to 1938; and from 1938 to the time her deposition was given, M. B. Stoer. All these agents are dead, but letters from some of them were produced and filed in evidence.
 

 Mrs. Akard testified that in 1907 the property was rented to Frank Black, and' the rent note corroborative of her testimony is attached to her answer. She stated that the property was rented for her by Bennie Smith to a negro named Pomp Conway. Giles Bell corroborated Mrs. Akard’s testimony and stated that Pomp-Conway worked the property. Mrs. Akard further testified that in 1914 the property was rented to Lawrence McDuffy. W. C.. Agurs testified to the same effect.
 

 The testimony offered on behalf of plaintiffs shows that the land was occasionally overflowed, but it was consistently rented by Mrs. Akard, or for her account,, from the time she acquired the property until the year 1922. During that period,, eight persons occupied the property as-tenants holding under Mrs. Akard. Her testimony is corroborated by letters which, she received from Russell P. Moore, now deceased, who handled the property for her.
 

 It is true defendants claim they have-possessed the property continuously from the date of the deed from Bush to Heffner up to the present time, this possession being held through Bush or his relatives.. Their testimony, however, is in conflict with the testimony offered by plaintiffs, the-letters written by Russell P. Moore and. certain physical facts. Among the physical facts are that for 52 years, since the execution of the deed, Mrs. Akard and her father paid all the taxes assessed against the property. On May 5, 1904, Mrs.
 
 *767
 
 Akard and the other heirs of James Heffner, for a consideration of $200, sold to the Texas and Pacific Railway Company a strip of land 100 feet in width extending across the property, being the strip of land occupied by the T. S. & N. Branch of the Texas and Pacific Railway Company as a right of way and containing 1.62 acres. Subsequently, the heirs of Heffner, for a consideration of $75, sold to the City of Shreveport approximately one-half acre of the property for its waterworks plant. Furthermore, defendants allege that plaintiffs have derived sufficient revenues from the property to pay the debt due by Bush to Heffner. Obviously, if Mrs. Akard has derived revenues from the property, she must have been in possession thereof. It may also be observed that the heirs of Bush admittedly had knowledge of their claim to the property for seventeen years prior to the institution of this suit and did nothing whatever to vindicate their title until oil was discovered in that vicinity.
 

 Plaintiff’s title was not defeated by the ex parte judgment recognizing Sally Bush as widow in community and Corinne Bush Patterson as heir of- Isaac Bush and sending them into possession of the property involved in this suit. This judgment was rendered and signed on November 3, 1922, and shortly thereafter was followed by an act of partition executed between the widow and heir of Bush and Clifton F. Davis. Nor was plaintiffs’ title defeated by the act of partition or by the judgment maintaining the exception of no cause of action in the jactitation suit filed by plaintiffs against defendants, in the First Judicial District Court, in 1939.
 

 We find no merit in the defendants’ contention that the purchase price set forth in the deed from Bush to Heffner had been repaid. The evidence offered in support of the contention is too vague and uncertain to be entitled to any weight. Neither do we find any merit in defendants’ alternative contention that plaintiffs had received in revenues and from transfers of portions of the property an amount more than sufficient to discharge the debt due by Bush to Heffner. If Heffner became the owner of the property by reason of the failure of Bush to redeem it within the stipulated period, he was clearly entitled to receive the revenues derived from the property and the proceeds of the sales of any portion thereof. As we have herein-above observed, the fact that he had derived these revenues and proceeds was one of the elements showing his ownership and possession of the property in dispute.
 

 Defendants’ alternative contention that the deed from Bush to Heffner was in reality a mortgage and since plaintiffs have demanded the reformation of the deed, defendants are entitled to pay the price and redeem the property, must also be rejected.
 

 As we have found that the title to the property vested in Heffner upon the failure of Bush to exercise his right of redemption within the stipulated period and the subsequent delivery of possession to Heffner, the question of whether the deed from Bush to Heffner was a sale or a mortgage
 
 *769
 
 has passed out of the case. Plaintiffs, in asking that the deed be reformed, are not seeking to make a new contract but only to have the court declare what the intention of the parties was at the time the contract sought'to be reformed was entered into. The fact that plaintiffs are' asking for a right which they contend was granted at the time of the execution of the contract does not authorize the court to write a new contract for the parties so as to allow one of them an additional period of 52 years within which to redeem the property. This disposes of defendants’ contentions on the merits.
 

 We shall now consider plaintiffs’ demand for the reformation of the deed from Isaac Bush to James Heffner. In asserting this demand plaintiffs are seeking to enlarge a written contract .so as to include property not mentioned in the contract.
 

 The evidence of mutual error which will justify the reformation of a deed must be clear and the strongest possible that can be produced. Crowell & Spencer Lumber Co. v. Hawkins, 189 La. 18, 179 So. 21.
 

 It is incumbent upon plaintiffs to establish their claim for the reformation of the deed by adequate evidence. This they have failed to do.
 

 Isaac Bush and James Heffner, the parties to the deed, have been dead for many years. There is no evidence in the record to show that they executed the deed in error or that they intended to in-elude in the transfer property not mentioned in the deed.
 

 The only argument advanced by plaintiffs in support of their claim for the reformation of the deed is that a portion of the property conveyed by Bush to Heffner was not owned by Bush and that it must be presumed Bush would not transfer something he did not own. But Bush may have thought he owned it and there is nothing to show the contrary.
 

 The fact that Bush owned a tract of land on the north side of Cross Bayou running across forty acres of land with varying width certainly does not show it. Bush owned more than a ten-acre tract of land and the southern boundary of the tract was constantly shifting because it bordered on a navigable stream. It is fair to assume, we think, that when they executed the deed, both Bush and Heffner knew what they were doing and that they acted in utter good faith and from an honest motive.
 

 In the face of the specific description of the tract of land contained in the deed from Bush to Heffner, the court can not indulge in any inference or fanciful theory for the purpose of changing that description so as to include within its terms a tract of land that it does not cover.
 

 The conclusion we have reached renders it unnecessary for us to consider the special pleas filed by the parties.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., does not take part.