58 So.2d 255 (1952)
McCARTY
v.
ANDERSON.
No. 3527.
Court of Appeal of Louisiana, First Circuit.
March 24, 1952.
Rehearing Denied April 28, 1952.
Writ of Error Refused June 2, 1952.
Benj. W. Miller, and Talley & Anthony, all of Bogalusa, for appellant.
Ott & Richardson, Bogalusa, for appellee.
*256 ELLIS, Judge.
Plaintiff has instituted this action against the defendant to have corrected a deed in which he bought certain property from the defendant. In the alternative, plaintiff asked for the rescission of the sale and the return to him of the purchase price of $600 plus $600 additional which he alleged he had spent in improving the land, and in the further alternative the plaintiff prayed for judgment against the defendant for the $600 spent in improving the land.
The defendant admitted that he sold certain land to the plaintiff but declared that it was sold by survey agreed to by the parties and that the survey accurately represents the agreement entered into by the parties at the time the negotiations for the sale were made and that the plaintiff, at the time he purchased the property, actually knew what he was purchasing.
After due trial the lower court with written reasons rendered judgment dismissing plaintiff's suit at his cost, from which plaintiff had appealed.
The facts in this case show that sometime prior to September 3, 1948 the plaintiff, wishing to buy a piece of property upon which to locate his own automobile repair shop, entered into an agreement to purchase and the defendant to sell certain property belonging to the latter, situated on Columbia Street in the City of Bogalusa. It is proven that the plaintiff and defendant looked over the ground and agreed upon a starting point, and that at that time the plaintiff, who was using crutches, drove a stob in the ground. The defendant demanded that the plaintiff have a survey and plat made showing the exact boundaries of the property and that he have a deed drawn in accordance with such survey and boundaries. The next day or shortly thereafter the plaintiff, having employed the services of Mr. Champagne, a surveyor, met with the surveyor and the defendant, and the surveyor, in the presence of plaintiff and defendant, drove an iron stob in the ground at the agreed point of beginning which was the same as had previously been fixed by the plaintiff and defendant. When the surveyor returned that afternoon, he was asked by the defendant to move this iron stob, which was the point of beginning, north. At the time that he moved the point of beginning north, thereby decreasing the amount of property which the plaintiff had agreed to buy and the defendant had agreed to sell, the plaintiff was not present. While it is true that the surveyor, being employed by the plaintiff was the latter's agent, this is not true when the surveyor took orders from the defendant and changed the point of beginning, and such action on the part of the surveyor, without the knowledge and consent of the plaintiff, would not be binding upon the plaintiff. The surveyor said nothing to the plaintiff about the change in the starting point and the plaintiff then had the deed drawn in accordance with the survey and map attached.
It is shown that most of this land except that south of the changed starting point is low and swampy, and it is further shown that even that portion which the plaintiff thought he was getting needed filling and, accordingly, plaintiff hired one Roy Hebert, to fill in the property. The plaintiff, believing that his title and survey included the fifteen feet south of the changed starting point, had Hebert start filling on this disputed strip of land. There is some dispute as to how much filling had been completed on this 15 foot strip but the record shows without a doubt that some time afer the filling had begun the defendant notified the plaintiff that he was filling in his, the defendant's, property, and that the plaintiff had better see his surveyor. The plaintiff then called upon Mr. Champagne, which was approximately one year after he had purchased the property, and for the first time learned that under orders of the defendant Champagne, the surveyor, had moved the starting point north of the point of beginning agreed upon by the plaintiff and defendant and confirmed in the presence of the surveyor. The plaintiff positively denied that he knew that this starting point had been changed, and the surveyor does not testify that he told the plaintiff that the defendant had instructed him to change the starting point which he had done, but there is a question raised in the case as to whether or not the plaintiff was not actually present at the time of the *257 survey. The trial judge concluded that the plaintiff was present at the time of the survey and mainly upon this ground dismissed his suit. We cannot agree with this finding for many reasons.
First, the defendant took the stand and positively denied that any starting point was agreed upon other than at the time and date of the actual survey, and that the plaintiff was present at this survey. This testimony is shown to be untrue, for the surveyor frankly testifies that he drove the iron stob in the ground in the presence of the plaintiff and defendant, and that it was at a later time that he made the survey. The defendant also denied that he instructed the surveyor to change the point of beginning from that agreed upon, however, the lower court concludes, and correctly, that the defendant did instruct the surveyor to change the starting point. Therefore, if the defendant's testimony is incorrect on these two material facts, it should be given little weight on the third ground that the plaintiff was present when the survey was made, which the plaintiff absolutely denied and which, in our opinion, the surveyor practically corroborates. The surveyor refused to positively dispute the fact that the plaintiff was not present at the time of the survey and the change in the starting point. In speaking of the actual survey and as to who was present, Mr. Champagne testified:
"Q. Was Mr. McCarty there? A. I don't remember who all was present.
"Q. Do you know Mr. McCarty? A. Yes.
"Q. Do you know what his physical condition was at that time? A. He was on crutches at the time.
`Q. Do you remember seeing anybody there on crutches that afternoon? A. I do not say who was there specifically.
"Q. Was anything done about moving the iron stake? A. The iron stake was supposed to be moved at the request of Mr. Anderson.
"Q. Do you know about how far you moved it? A. I would not say. I do not remember that far.
"Q. Approximately, would you answer approximately? A. I would not say because I do not know.
"Q. In which direction was the stake moved? A. North of the iron pin which I had driven down previously as the point of beginning.
"Q. At whose direction? A. At the instruction of Mr. Anderson before I made my proces verbal.
"Q. If Mr. McCarty says he was not there would you say he was wrong? A. Of course not. I cannot tell whether he was or not." On cross examination he testified:
"Q. Was Mr. McCarty there? A. I cannot say.

* * * * * *
"Q. You don't mean at this time you would make the survey then without both parties knowing? A. I don't think I would. When a man owns property and he diercts me to go anywhere within his property, as long as I am aware I am on his property, I will usually follow his directions.
"Q. You knew you were surveying for Mr. McCarty? A. Yes.
"Q. You don't mean to tell me you would put a stob as the point of beginning to a piece of land Mr. McCarty was buying with (without) his knowing where you put it? A. I do not usually follow that procedure. I do not know whether he was there. It is strange to me at this time he would not be informed of it.
"By the Court:
"Q. You were hired by Mr. McCarty? A. Yes.
"Q. Does it not stand to reason you would not have been there changing the point of beginning without Mr. McCarty being there? A. That is the way it seems to me. He would have been there or I would have informed him.
"Q. Are you not practically positive he was there even though you cannot recall? A. I guess you are right.
"Q. I want you to tell me whether you would have done such a thing if he was not there? A. I do not think I would."
*258 The testimony of Champagne is unconvincing and does not overcome the plaintiff's positive denial and the corroborative act of hiring someone to haul dirt and fill in the disputed strip of land if he had been present at the survey. His every action is that of a party ignorant of the fact that the agreed starting point had been changed.
The plaintiff is also corroborated in his testimony that he and the defendant first agreed upon the starting point and that the plaintiff drove a stob in the ground with his crutch by the witness McNabb who also testified that at the request of the plaintiff on the same afternoon he had gone back to the point of beginning which he had seen plaintiff and defendant agree upon and had stepped the distance from this point to the north side of defendant's building and that it was approximately eight paces or 24 feet.
We are of the opinion that the starting point was moved by the surveyor at the request of the defendant and without the knowledge and consent of the plaintiff, and that the plaintiff was not present at the socalled survey and has proven by a preponderance of the evidence that the defendant had agreed to sell and plaintiff had agreed to buy the additional strip of ground which the defendant later caused to be omitted from the survey and description by his deliberate instructions to the surveyor to change the theretofore agreed starting point accordingly.
Under these facts the plaintiff is not entitled to a correction or reformation of the deed, for the authorities are uniform that the evidence of mutual error which will justify a reformation of a deed must be clear and as strong as possible. Crowell & Spencer Lumber Co. v. Hawkins, 189 La. 18, 179 So. 21; Akard v. Hutton, 196 La. 758, 200 So. 137.
In the present case the mistake was not due to any mutual error but was due to the defendant, without the knowledge or consent of the plaintiff, instructing the surveyor to change the agreed starting point, thereby depriving the plaintiff of a portion of ground which he had previously agreed to sell him.
Under the facts, however, the plaintiff is entitled to have the sale annulled on the ground of material error or mistake.
R.C.C. Article 1819: "Consent defined Mistake, fraud, or duressEffect.Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced byError; Fraud; Violence; Threats."
R.C.C. Article 1820: "Kinds of error. Error, as applied to contracts, is of two kinds:
"1. Error of fact;
"2. Error of law."
R.C.C. Article 1821: "Error of fact defined.That is called error of fact, which proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none."
R.C.C. Article 1823: "Sufficiency of error to invalidate contract.Errors may exist as to all the circumstances and facts which relate to a contract, but it is not every error that will invalidate it. To have that effect, the error must be in some point, which was a principal cause for making the contract, and it may be either as to the motive for making the contract, to the person with whom it is made, or to the subject matter of the contract itself."
The Supreme Court in Cheramie v. Stiles, 215 La. 682, 41 So.2d 502, 504, stated:
"(2) Moreover, the contract cannot be given effect because there was an error of fact as to the principal cause and motive for making the contract. The contract was entered into under the mistaken belief that the delay rentals had not been paid and that the lease could be cancelled because of this breach. Under the provisions of Articles 1819, 1821 and 1823, revised Civil Code, the contract must fall.
*259 "(3) `Contracts are founded on the agreements, not on the disagreements, of the parties. Where they misunderstand each other, there is no contract.' Laborde v. Aymond, 172 La. 905, 135 So. 913, 914, citing Pittsburg & Southern Coal Co. v. Slack, 42 La.Ann. 107, 7 So. 230.
"(4) The existence of an error of fact proceeding from ignorance of what really exists or the mistaken belief in the existence of facts which are the principal cause of and bear upon the motive for the yielding of consent to an agreement are sufficient grounds to set aside a contract. Calhoun v. Teal, 106 La. 47, 30 So. 288.
"Consent is vitiated by error. Pan American Production Co. v. Robichaux, 200 La. 666, 8 So.2d 635."
The Pan American Production Co. v. Robichaux case, supra [200 La. 66, 8 So.2d 637], involved a dispute as to the proper location of a dividing line between adjacent properties. In affirming a finding of fact as to the establishment of the dividing line between the two properties by the surveyor, the Supreme Court stated:
"`There can be no dispute that the surveyor, O. O. Gutekunst, erred in locating the division line between the two properties on the ground. Not only was error committed in that respect but likewise there was error in the location of said line on the plat. The instrument of partition, however, is not erroneous in describing the respective titles of the parties. The said surveyor acknowledged his error as a witness. The explanation of his error is that he located the land on the ground and on the plat by starting from a post that had been shown to him as the common corner to Sections 24 and 25, T. 13, S.R. 9 E., and Sections 19 and 30, T. 13, S.R. 10E. He frankly admits that he made no effort to establish the common corner to the above mentioned sections by government field notes. Shortly previous to the trial of this case this surveyor, in company with other surveyors, located this common corner and it was definitely shown to be 470 ft. north of the point that he assumed to be the corner when the division line and the plat was made to serve as a basis for the partition.'
"It clearly appears, therefore, that this partition line was located by the surveyor 470 feet south of where it should have been located, the result being that, according to the survey, the 29-acre tract set apart to E. J. Robichaux was not bounded on the north by the Alleman tract as it should have been, but was 470 feet too far south.

* * * * * *
"Whether O. O. Gutekunst was a sworn surveyor of this state is not disclosed by the record. Presumably he was, but he made no proces verbal of his work in the presence of two witnesses called for the purpose. Therefore counsel is correct in his statement that this so-called dividing line was established by the consent of the parties. It was not made according to the requirements laid down by the Code. But counsel for Robichaux argues that, even though the line was not established in conformity with the requirements of the Code, yet the legal effects of the establishment of the line, in so far as Ecuer is concerned, are the same as if the line had been established according to law, because of Ecuer's long acquiescence in the establishment of the line and his recognition of it as the true boundary line. In other words, Ecuer's `consent' binds him.
"But did Ecuer consent to the establishment of the so-called dividing line between the two tracts where the surveyor put it? Did Robichaux himself consent? Consent in law is more than a mere formal act of the mind. Legal consent is an act unclouded by error or mistake. Consent is vitiated by error. Consent produced by error of fact is not legal consent. The consent of the parties that the dividing line between the two estates be located where the surveyor put it was due to mutual error of fact. Each intended that the property be divided into two equal parts, and each understood that the line was run by the surveyor in accordance with the title. The surveyor intended to divide that land into two equal parts according to title. But he testified that he made a mistake. Therefore, all parties concerned were laboring under the mistaken belief that the line run by the surveyor divided the 58.12-acre tract into *260 two equal parts. Therefore it cannot be said that either Ecuer or Robichaux legally consented to the location of the dividing line at the place where the surveyor put it."
In the present case, it is shown that the great portion of the land which the plaintiff intended to purchase from the defendant was low and swampy and that without the relatively high piece of land which was excluded from the survey under the instructions of the defendant without the plaintiff's knowledge or consent the plaintiff would not have purchased the property. The plaintiff never consented to purchase the property as surveyed or described in the present deed. Any consent on his part was through error or mistake and such consent was produced by the erroneous belief of the plaintiff that he was acquiring the additional strip of land which was specifically excluded without his knowledge or consent. He is entitled to have this sale annulled and to a judgment for the return of the purchase price and also a judgment for the cost of the improvements placed upon the land, that is, the cost of the filling which he has successfully proven to be $500. There is in evidence a $200 check which plaintiff identified as having been paid for filling and he then testified that he paid $300 additional in cash to Mr. Hebert, who was not a witness on the trial of this case. However, plaintiff explains Hebert's absence and this should not mitigate against him. He has certainly shown payment of $500. His testimony is convincing to us.
It is, therefore, ordered, adjudged and decreed that the judgment of the district court be reversed and that there be judgment in favor of the plaintiff, Curtis McCarty, and against the defendant, Albert S. Anderson, rescinding and annulling that certain act of sale recorded in Conveyance Book 104, page 575 of the records of Washington Parish, to the following described property:
"All that part of Lots Seven (7), Eight (8) Nine (9), Eleven (11), Twelve (12), Thirteen (13), and Fourteen (14) of Block Four (4) of the L. A. Piecre (Pierce) Revised Addition to Bogalusa, Louisiana, which is situated within the boundaries of the following described tract:
"From the Southwest corner of Block Four (4) of the L. A. Pierce Revised addition to Bogalusa, run along the East line of the existing Columbia Street in a northerly direction Three Hundred Fifty-five and no/10 (355.0) feet to an iron stob and point of beginning; thence continue along the East line of the existing Columbia Street in a Northerly direction to the intersection of the North boundary of Section Thirty-nine (39), Township Three (3) South, Range Thirteen (13) East, Greensburg District, Louisiana; thence return to the point of beginning, and turn Ninety (90) degrees and no (0) minutes right and run Two Hundred Twenty-three and 14/100 (223.14) feet to a point on the west line of First Avenue; thence turn One Hundred Seven (107) degrees and No (0) minutes left and run along the West line of First Avenue in a Northerly direction to the intersection of the North boundary of Section Thirty-nine (39), Township Three (3) South, Range Thirteen (13) East, Greensburg District, Louisiana; thence run along the North boundary of Section Thirty-nine (39) in a Northwesterly direction to the intersection of this line and the East line of existing Columbia Street.
"As per survey of E. J. Champagne, Registered Surveyor, dated September 3, 1948."
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, Curtis McCarty, and against the defendant, Albert S. Anderson, in the full sum of $1100 with legal interest thereon from judicial demand until paid and all costs of this suit.

On Application for Rehearing.
PER CURIAM.
Defendant-appellee, Albert S. Anderson, in his application for a rehearing contends that we erred in the following particulars: "1. The Court was in error in holding that the point of beginning of the land sold by defendant to plaintiff was changed without the consent of plaintiff."
In substantiation of this error, he contends that we are disturbing the finding of the trial judge. In this, he is mistaken. We quote from the trial judge's opinion: "Shortly after the surveyor was employed *261 by the plaintiff he went upon the property and, in the presence of both parties, established the starting point at the southwest corner of the lot to be sold. The testimony shows that this point was indicated by driving an iron stob into the ground. On the same day, (that afternoon), or the next day, this surveyor was called back to the property (the evidence not reflecting by whom) and the starting point, which had been indicated by an iron stob, was moved some feet norththe exact number of feet not being shown. I am satisfied from the testimony that the changing of the starting point was brought about at the request of the defendant." These facts found by the trial judge are contrary to defendant's testimony but are amply supported by the record. We do admit that the trial judge found that plaintiff was present at the changing of the starting point but we are of the opinion that he is in error. The plaintiff, in his testimony, is very positive that he was not present at that time. Mr. Champayne, the surveyor, in his testimony is not certain that the plaintiff was present. Champayne's testimony is that on the morning of the survey, plaintiff and defendant were present, and showed him the starting point. He had a wire pin, or stob, driven into the ground and then started his survey. On the evening, defendant had him to move the starting point to the north. We see no valid reason why plaintiff should have been present in the afternoon. We are of the firm opinion that Mr. Champayne changed the starting point at the request of defendant, in the absence of the plaintiff, for the reason that he knew the defendant to be the owner of the property and felt that he had to follow his, defendant's, instructions.
In his application, he states, "Defendant Anderson gives a straight forward account of the matter." We are sorry to state that we do not see it that way. The record is otherwise. If he has not falsified in his account of the matter, he has certainly colored and stretched the truth.
"2. The Court was in error in holding that the surveyor ceased to be the agent of plaintiff when he is supposed to have moved the point of beginning at the request of Anderson, and without the knowledge and consent of plaintiff." In short, this assigned error is covered in our discussion of assigned error No. 1, and is fully covered by our original opinion.
"3. The Court was in error in rescinding the sale for mistake or error on the part of plaintiff." In answer to this assigned error, we state that it is merely the conclusion of the pleader, defendant-appellee.
"4. The Court was in error in condemning defendant for $500.00, the alleged amount spent by plaintiff in filling in the land." Our answer is that the record fully justifies our award.
In conclusion, after a thorough re-examination and reconsideration of the record, we are firm in our opinion that we have correctly set out the facts and have correctly set out and applied the law in relation thereto and that we have not committed any errors as contended for by the defendant-appellee.
Finding no error committed by us, the application for rehearing is denied.