PRICE, Judge.
Plaintiff has appealed the judgment rejecting his demands for damages for breach of contract. The question is whether the contract is voidable because of an error of fact in the principal cause.
Laster M. Leachman named El Dorado Poultry Company, The Pillsbury Company, and Imperial Foods, Ltd. as defendants in this action. El Dorado Poultry is an affiliate of the J-M Poultry Packing Company which is a corporate division of Pillsbury.
The facts of this litigation and the contentions of the parties are concisely stated by the trial judge in his comprehensive reasons for judgment:
On June 11, 1970, plaintiff and J-M Poultry executed an instrument designated as a Lease Contract and Agreement under the terms of which plaintiff leased to J-M Poultry a total of six broiler houses and the equipment contained therein . . . . The lessee obligated itself to place broilers in the houses as well as provide feed and medication. . The duration of the lease was seven years with an option on the part of the lessee to extend the contract for an additional four years. .
Plaintiff’s actual dealings under this contract were with Ruston Broiler Company, presumably either a division of J-M Poultry or a sister corporate division of The Pillsbury Company.
Following complaints from plaintiff and other growers that they were not realizing adequate profits from long-term growing contracts such as that described above, Ruston Broiler Company initiated a policy of entering into individual “batch-to-batch” contracts with growers in plaintiff’s area. These agreements proved to be more financially advantageous to the growers but obligated the supplier to furnish only one batch of chickens and terminated with the delivery of that particular batch which normally took about eight weeks to grow. Each agreement constituted a separate contractual obligation. Plaintiff executed this kind of contract with Ruston Broiler Company on August 16 and November 8, 1971, and on January 31 and April 24, 1972. Then, on May 10, 1972, plaintiff signed and remitted to Ruston Broiler Company the following document:
*1226 “Ruston, Louisiana 71270 I, LASTER LEACHMAN, do hereby release Ruston Broiler Company and J. M. Poultry Packing Company of all obligations and liabilities in the Contract and Agreement made and executed on the 11th day of June, 1970, which covered a period of 6 years from date executed, which I terminated on 5-10-72.
* * * * * *
Plaintiff continued doing business with Ruston Broiler Company on a “batch-to-bateh” basis until December, 1972, when J-M Poultry decided to discontinue broiler operations in the Ruston area. It was at this time that the confusion arose which led to this litigation. Apparently the release executed by plaintiff was retained in the files of Ruston Broiler Company in its Ruston office instead of being sent to J-M Poultry’s district office in Alexandria, Louisiana. Therefore, when J-M Poultry elected to withdraw from plaintiff’s area it forwarded to the office of El Dorado in El Dorado, Arkansas, the original long-term broiler growing contract dated June 11, 1970, under the impression that its obligations thereunder to plaintiff were still viable.
In January of 1973 representatives of El Dorado visited plaintiff’s farm to inform him that, although he was outside that company’s geographic area and that they would prefer not take him on as a grower, they felt obligated to do so under the terms of his original contract with J-M Poultry. Plaintiff expressed a desire to be placed on a “batch-to-batch” basis with El Dorado’s other growers because of this arrangement’s attractive financial features, but his request was denied. Given time to consider whether he wished to be serviced under the long-term contract, plaintiff telephoned his acquiescence to El Dorado a few days later. Pursuant thereto El Dorado began placing broilers in plaintiff’s houses. Plaintiff grew several batches of chickens during 1973 for which he received remuneration from El Dorado in accordance with the June 11, 1970 contract. However, plaintiff continued to express to El Dora-do his dissatisfaction with the financial features of that agreement.
* >}: * * * *
In October, 1973, plaintiff complained to the United States Department of Agriculture that he was growing broilers for El Dorado but did not have a signed contract. Upon receiving an inquiry from the government agency, the manager of El Dorado checked the records in the Ruston office of Ruston Broiler Company and discovered the release which had been executed on May - 10, 1972. Therefore, El Dorado wrote Leachman a letter dated December 13, 1973, as follows:
* sit * * * *
This is to confirm the conversation Lonnie Couch and I had with you yesterday, where we agreed to put in one more batch of broilers under the terms of the contract presented. You are to let us know in the next few days as to whether you will accept this batch or not.
Our company has made the decision to cut back to our original operating area due to the shortage of diesel fuel. Our allotment of fuel has already been cut back, but we feel we can feed your houses one more cycle in order to give you ample notice that we are cutting back.
sj< * sfc sjs ^ *
Plaintiff rejected El Dorado’s offer to supply him with one last batch of broilers and, consequently, did not raise chickens for any of the defendants or their subsidiaries after December, 1973. He began negotiating with ConAgra to grow broilers for that company and proceeded to spend some $24,000.00 to modify his broiler houses in order to meet the requirements of ConAgra. Plaintiff received his first batch of broilers from that supplier on April 12, 1974, and has subsequently been involved as a grower for ConAgra, apparently on more attractive financial terms than he enjoyed with El Dorado.
*1227 It is plaintiff’s position that the offer by El Dorado in January, 1973, to service him under the terms of the June 11,1970, contract with J-M Poultry constituted the formation of a new contract containing the identical provisions of the original long-term growing agreement. Therefore, El Dorado’s letter of December 13, 1973, breached that contract causing damages to plaintiff which consisted primarily of his expenses incurred in insulating his broiler houses to comply with Con-Agra’s specifications.
On the other hand defendants argue that the agreement whereby El Dorado undertook to service the 1970 contract was entered into by that defendant under a mistake of fact, namely ignorance of the existence of the release, which was the principal cause or motive for the 1973 undertaking.
A valid contract must have the consent of the parties legally given. La.Civil Code Art. 1779. There is no consent where it has been produced by error. Art. 1819. An error of fact “. . . proceeds either from ignorance of that which really exists, or from a mistaken belief in the existence of that which has none.” Art. 1821. To invalidate a contract, the error must be in the principal cause for making the agreement and the opposing party must have knowledge thereof. Art. 1823 and 1826.
“Engagements made through error, . are not absolutely null, but are voidable by the parties, who have contracted under the influence of such error, . . . .” Art. 1881.
The trial judge found that the sole reason El Dorado agreed to continue servicing plaintiff under the 1970 contract was its mistaken belief that this contract was still in effect since El Dorado was unaware of plaintiff’s having executed the release in 1972. The court further found the principal cause for El Dorado’s making the agreement with plaintiff was based on this error of fact, and that El Dorado had taken proper steps to void the agreement. This finding is in accord with the evidence, the pertinent codal articles, and the jurisprudence. See Marcello v. Bussiere, 284 So.2d 892 (La.1973); McCarty v. Anderson, 58 So.2d 255 (La.App. 1st Cir. 1952), and Cheramie v. Stiles, 215 La. 682, 41 So.2d 502 (La.1949).
We do not find any merit to plaintiff’s argument that El Dorado had constructive knowledge of the 1972 release signed by plaintiff which was in the files of the Ruston Broiler Company. Although the evidence is scant on the legal relationship of these firms, they appear to have been separate corporate entities and did not have common management. Under these circumstances, El Dorado did not have constructive knowledge of the release.
Plaintiff alternatively contends he is entitled to be compensated under the doctrine of unjust enrichment or quantum me-ruit. To recover under these equitable doctrines, it is incumbent on plaintiff to show enrichment without justification of the adverse party which has caused him impoverishment, and that he has no other remedy at law. Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).
Plaintiff has failed to establish either the enrichment of defendants or his own impoverishment. The evidence shows it was unprofitable for El Dorado to service plaintiff’s brooders because he was located beyond El Dorado’s normal area of activity.
The expenses plaintiff claims in insulating some of his brooders to comply with ConAgra’s requirements are not losses, but capital improvements on his property.
The judgment is affirmed. Costs are assessed to the appellant.