The opinion of the court was delivered by
Miller, J.
The plaintiffs, the widow and heirs of James Billiu, seek to recover from defendant certain property in the parish of Lafourche, known as lot No. 16, on the left bank descending of the Bayou Lafourche, about sixteen miles below Thibodaux. They trace title to one undivided half as derived from their father, and aver title from Clara S. Perkins to the other undivided half.
The defendant, Godchaux, answered, pleading the general issue, prescription, and set up title from Meyer aud Joseph Weill of date October 25, 1892; by a supplemental answer, defendant alleged that lot No. 16, claimed in the suit, formed part of Utopia plantation; that the title thereto of James Billiu and Mrs. Perkins, under whom plaintiffs’ claim was divested years before by sales to Marion W. Billiu, under whom defendants claim by various conveyances ; that in these conveyances, all conveying the Utopia plantation, lot No. 16 was omitted in error, but was intended to pass and was conveyed, the description being the “Utopia” plantation, known to embrace No. 16; the estoppel is pleaded, claiming to arise from the fact that the lot was inventoried when James Billiu died as part of “Utopia,” and hence plaintiffs, his widow and heirs, can not now dispute the lot was such part; the answer'prays for judgment against plaintiffs; for the maintenance of the prescription and estoppel pleaded, and that in the event the court should hold the description in the acts do not suffice in terms to convey the property in dispute, that the description be reformed so as to make that conveyance accord with the intentions of the parties.
From the judgment of the lower court in favor of plaintiffs, defendant takes this appeal.
In 1855 James Billiu acquired the plantation, of which the lot No. 16 was part. The description was a front tract of four and a half arpents by forty arpents, and a back tract made up of lots 17, 26, 27, 28, 16, 18 and 19. The lot 16 here enumerated is that in dispute. Subsequently Billiu conveyed one-half the plantation to J. S. Perkins, and then begun, as we gather from the record, a planting partnership between the joint owners. In 1860 Billiu and Perkins *1573 mortgaged the property to their factor, West, Renshaw & Oammack, for sixty-five thousand dollars, the name given to the property in the mortgage act being the “Utopia,” and the description embraced lot 16 as part of it. Later, the wife of Perkins died; the one-half of the plantation acquired by her husband, treated as part of the community, was sold to settle her succession, and by the adjudicatee conveyed to Clara L. Blanchard, the second wife of J. S. Perkins. James Billiu died in 1865. His property, including the one-half of Utopia, was inventoried, the description naming lot 16 as part of it, and was ordered to be sold, the Oanal Bank, holder of the mortgage note of 1860, provoking that sale to pay the mortgage debt. At that sale, made in 1875, Marion W. Billiu, one of the sons of James Billiu, became the purchaser; but in the sheriff’s deed the ‘•Utopia” is stated to be composed of lots 17, 18, 19, 26, 27, and 28, lot No. 16, the one-half of which, and the other lot, though ordered to be sold, not being mentioned in the deed. In 1882 Mrs. Perkins conveyed to Marion W. Billiu the undivided half of the “Utopia;” but, in enumerating the lots, No. 16 was not named. This-contention arises out of the sheriff’s deed and the sale of Mrs. Perkins. The half of the Utopia of Marion W. Billiu was sold under the same description contained in the sheriff’s deed; his vendor re-conveys, reserving the usual mortgage; under the foreclosure of that mortgage the property is purchased by Weill, the author of defendant’s title; then Weill sells, purchases again under the foreclosure of his mortgage, and finally, in 1892, Weill sells to defendant. In all these sales, beginning with the sheriff’s deed in 1875, the property is designated as the Utopia; but No. 16, though always from an early period forming part of it, is not mentioned. The defendant claims it passed by manifest intention and necessary implication.
This intention, it is claimed, is manifest from other facts disclosed by the record. The purchase of Marion W. Billiu at the succession sale of his father’s property was in the interest of his mother and his co-heirs, as shown by his counter letter. The purchase by him from Mrs. Perkins was in the same interest. The counter letter is followed by the sale of the family to him of the one-half purchased at the succession sale. Thus placed in his father’s position in reference to the partnership property, the partnership begun in his father’s lifetime continued between him, representing his family, and Mrs. Perkins. In January, 1882, there is on the record a sale of the *1574 one-half of the Utopia from Marion W. Billiu to Cammack, from Cammack back to Billiu of the property. On the same day the conveyance is executed from Mrs. Perkins to Billiu of one-half of her interest in the Utopia plantation, and a conveyance from Billiu to Mrs. Perkins of the half of the Mary plantation, part of the partnership property, the interest of his father in the Mary having been acquired by Marion Billiu along with the interest of his father in the Utopia. Dealing with a complicated record, in which scant admissions are substituted for the acts, we may not be entirely accurate as to the details of this labyrinth of conveyances, but we appreciate the general tenor of the acts and understand the significance attributed to them as denoting a settlement of this planting partnership. That this settle - ment was proposed is also disclosed by oral testimony produced by defendant. On the strength of all this, the conclusion is deduced in the argument for defendant that this settlement being intended, Billiu conveying to Mrs. Perkins all his interest in the Mary, one part of the partnership property, we are to read into her conveyance of the interest she had in the Utopia, also part of the partnership, property, lot No. 16, though not mentioned in the act. On this theory rests the defendant’s contention, that already divested by her conveyance of 1882 of her one-half in the Utopia, her subsequent sale in 1892, under which plaintiffs claim, passed nothing.
The plaintiffs objected to all parol for the purpose of showing that any interest in lot No. 16 not mentioned in the deeds was intended to be conveyed. The alleged error of the acts in not mentioning this lot was introduced in the supplemental answer. If we are to understand the filing of this supplemental answer is disputed, we, dispose of that objection. Error must be specially pleaded. The allegation might have accompanied the other defences on the original answer. Not changing the issue of the ownership of lot 16, but simply amplifying the title relied on by defendant, we think defendant was entitled to the amendment. Code of Practice, Arts. 419, 420; 2 Hennen’s Digest, 1182, No. 9; Payne vs. Railroad, 38 An. 164.
Nor have we any doubt under an allegation of error an omission in an act may be supplied. The power to reform and correct acts so as to make them conform to the real intentions of parties, when, through inadvertence or accident, the purpose is not expressed, is of frequent exercise in courts of equity, and our courts administer the same relief. Of course, the proof of error must be clear. Nor do we appreciate that this relief can not be afforded defendant because the *1575 alleged error occurred in the written acts prior to his own title. The plaintiffs claim in part as heirs of James Billiu. If, in our opinion, his title was divested by the sheriff’s sale of 1875, any testimony tending to show that divestiture and the error in the sheriff’s deed is admissible against his heirs. The plaintiffs claiming the other half as the assignees of Mrs. Perkins are bound, by any testimony that would bind her, to show that she had conveyed lot No. 16. See 1 Story’s Equity Jurisprudence, par. 152; Palangue vs. Guesnon, 15 La. 311; Robert vs. Boulet, 9 An. 29; Bryan vs. Wisner, 44 An. 832; Vignie vs. Brady, 35 An. 560; Vial vs. Moll et al., 37 An. 203.
On the question of the divestiture of the title of James Billiu, we have the succession sale of all his property, including his one-half lot No. 16, then forming part of the Utopia plantation, inventoried, and ordered to be sold. There is the act of mortgage of 1860 of the Utopia, enumerating specially this lot No. 16, under which mortgage the sale was made. It was the Utopia plantation by name and under that order of sale that Marion W. Billiu became the adjudicatee. It is to our minds clear that he became the owner of the undivided half of lot No. 16 by this adjudication. If he had stood before the court in 1875 exhibiting the inventory, the act of mortgage of 1860, the order of sale of the property embraced in that inventory and the mortgage and the proees verbal of the sale of the Utopia, the court would have promptly corrected the manifest error in not enumerating lot No. 16 as part of the Utopia. There is, too, on this branch of the case the record that the succession of James Billiu was closed, the debts paid as far as the property would suffice, with the petition from the executors importing to our minds the significance that all the property of his succession had been disposed of in course of administration. The heirs of Billiu appear to have acted on the theory that nothing remained of the succession property. It was not until 1892, some years after the close of the estate, that the form of the sheriff’s deed suggested this suit. In our opinion the title of their ancestor was divested. That is enough to dispose of their case. They are without interest to question whether the subsequent conveyances of the Utopia plantation, by which the property had been known for years, did not convey lot No. 16 as part of it. We think it did. Levy vs. Ward, 33 An. 1033; Dickson vs. Dickson, 36 An. 870; Bryan vs. Wisner, 44 An. 832.
As to the undivided half of Mrs. Perkins, claimed by plaintiffs, as, her assignees, the case, in our view, is different. She remained indis-i *1576 putably the owner of her one-half at and before the succession sale of James Billiu. Her conveyance to Billiu is in 1882. It mentions the Utopia plantation, but omits lot No. 16 in enumerating the lots. On the face of that conveyance she remained owner of one-half of lot No. 16. How can we assume that she intended to convey her interest in that lot. The defendant undertook to show her intention id that respect. It is contended the various acts of January, 1882, was a settlement of the partnership denoting her purpose to convey all her interest in all land ever belonging to the Utopia, and necessarily including her part of No. 16. But her conveyance omits No. 16. The parol proof administere 1, her own and the testimony of John W. B:lliu, fail, in our view, to show any intention other than that we can deduce from the acts. She testifies in effect she committed everything pertaining to that settlement to her husband, and has no knowledge on the subject. Her husband was dead. John S. Billiu adds nothing of benefit to defendant. What he does say of any pertinence makes, in our view, against defendant. No reference, he says, was made to No. 16 in that settlement. No change in boundaries occurred, he testifies, till 1882, rather implying that her part of No. 16 was then reserved to her. At best, the defendant has made it probable she intended to convey her interest in that lot. But the written title, omitting that lot, must stand unless the error is establis'.ed. We can not overthrow the title to real estate on any theory of probable intentino. In respect to the Billiu one-half we have the act of mortgage enumerating No. 16 as mortgaged, the order of sale directing the sale of the property. There is the presumption the sheriff followed the order. The conclusion on this basis alone is that not naming No. 16 in his deed is a mere inadvertence. We have other evidence besides to show that error. No such or any basis is, in our view, supplied as to the Perkins one-half.
There is no issue in this case as to rents and revenues reserved, we presume, for further proceedings.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed in so far as it decrees the plaintiff to be the owner of lot sixteen, claimed in plaintiff’s petition, and it is now adjudged and decreed that plaintiff, Mary E. Gladdish, be decreed to be the owner of one undivided half of said lot; the issue as to rents and revenues is reserved, costs of the lower court to be paid by defendant, those on the appeal by plaintiff.