ROGERS, Justice.
 

 By patent dated April 28, 1891, James C. Causey acquired from the state of Louisiana the S.% of the S.E.J4 of Sec. 21 and the N.% of the N.E.% of Sec. 28, Tp. I S., R. I W. in the parish of Evangeline. On February 18, 1893, Causey sold the “swamp” land, 100 acres, more or less, out of this tract to Sam Haas; and on February 13, 1897, Causey sold the “tillable” land, 62 acres, more or less, out of the tract to Dr. W. E. Hawkins. No survey was made of either of these tracts at the time óf its sale.
 

 On February 23, 1907, Dr. W. E. Hawkins by warranty deed sold to the Crowell & Spencer Lumber Company, Limited, 2,062.76 acres of land in Evangeline parish for the sum of $57,757.28. This sale was made according to governmental subdivisions. The tract of land which Dr. Hawkins had acquired from Causey was described in the deed as the S.% of the S.% of the S.% of the S.E.J4 of Sec. 21 and the N i/2 of the N.% of the N.E.J4 of Sec. 28, Tp. I S., R. I W.
 

 On September 20, 1923, the Crowell & Spencer Lumber Company, Limited, sold the lands which it had acquired from Dr. Hawkins, together with other lands, less
 
 *21
 
 the timber thereon, to the Meridian Lumber Company, Limited. A twenty-five-year limit was set for the removal of the timber.
 

 The tract of 60 acres that Dr. Hawkins under his acquisition from Causey sold to the Crowell Company, which was sold by that company to the Meridian Company, included a portion of the “swamp” lands previously sold by Causey to Samuel Haas. The lumber companies discovered this conflict of title in the year 1935, and they brought suit against the minor Martha Haas, who had acquired from Samuel Haas, to establish title, as provided by Act No. 38 of 1908. Plaintiffs notified Dr. Hawkins of the filing of the suit. In response to this notice, Dr. Hawkins appeared in the suit and filed an exception, which was overruled. Thereafter he took no further part in the proceeding.
 

 A survey and plat was made of the original Causey tract and offered in evidence. This survey showed that 39.12 acres of the land described in the deed from Hawkins to the Crowell Company were included in the deed to Haas. Since the •deed fom Causey to Haas primed the deed from Causey to Hawkins, the court properly found that these 39.12 acres belonged to the minor Martha Haas, and rendered judgment accordingly, reserving to the plaintiff lumber companies the right to sue Dr. Hawkins on his warranty of title.
 

 When the judgment had become final, the lumber companies brought this suit against Dr. Hawkins on his warranty to recover $1,095.36, on the basis of $28 per acre, for the acreage lost, with legal interest thereon from February 23, 1907, and for $42, the costs expended by them in the suit against the minor Haas.
 

 Defendant, in his answer, denied that the 39.12 acres from which plaintiffs had been evicted were worth $28 per acre, and averred that they were not worth more than $5 per acre. By supplemental answer filed on the day the case was fixed for trial, defendant alleged, in the alternative, that he never owned any lands in sections 21 and 28 except the lands purchased from Causey and that it was his purpose to sell and the intention of the Crowell Company to buy only those lands, but by mistake the lands were erroneously described so as to include the 39.12 acres which were decreed to belong to the minor Martha A. Haas. With this answer, defendant tendered the Crowell Company a correction deed and the costs of the Haas suit.
 

 The lumber companies rejected the tender and moved to strike out the supplemental answer on the ground that it changed the issues, and they also filed a plea of estoppel, on' the ground that Dr. Hawkins, having failed to defend the prior suit, was precluded from making any defense in this suit that he could or should have made in that suit.
 

 Plaintiffs’ motion to strike was overruled and their plea of estoppel was referred to the merits. The trial was then proceeded with and resulted in a judgment for plaintiffs in \the sum of $547.68, with legal interest thereon from February 23, 1907, and for $42, with legal interest thereon from May 6, 1935, and costs. On appeal, the judgment was reversed, the Court of Appeal holding that the tender of the cor
 
 *23
 
 rection deed and costs should have been accepted. After the refusal of a rehearing, the case was brought here for review of the judgment of the Court of Appeal.
 

 Plaintiffs’ motion to strike raises only two legal propositions, namely, that the supplemental answer changes the issue and that it seeks' to contradict written contracts. Plaintiffs, however, did not discuss these propositions in the Court of Appeal nor do they discuss them before this court. Their contention raised only in argument in both courts is that the correction or reformation of an instrument can only be made between the parties to the instrument and not between one of the parties' and a third person. Plaintiffs contend that the Meridian Company was not a party to the deed from Hawkins to the Crowell Company. But the Court of Appeal held that the plaintiff corporations were so closely connected in their official personnel and in the joint nature of their business operations that for the purposes of this particular matter they might be considered identical; and that defendant was within his rights in asking for a correction of the deed as to both corporations. 1
 

 Defendant argues that plaintiffs’ plea of estoppel is not well founded because article 2519 of the Civil Code to which they refer is inapplicable and the error in the description of ■ the property sold by defendant Hawkins to the Crowell Company could not have been urged against the minor Martha Haas in plaintiffs’ suit against her.
 

 The Court of Appeal held that the plea of estoppel was without merit, because the Haas minor had no interest in nor was she bound by the deed made by Hawkins to the Crowell Company. Her title was prior in date to Hawkins’ title, and any attempt by Hawkins in the prior suit to correct the deed made by him to the Crowell Company would have been irrelevant and useless.
 

 Irrespective of whether the rulings on the motion to strike and the plea of estoppel are correct, we do not think that the evidence adduced on the trial of the case is sufficient to sustain the allegation in the supplemental petition of mutual error of the parties in the deed from Hawkins to the Crowell Company.
 

 The proof of such error must be clear and the strongest proof possible should be produced. Palangue v. Guesnon, 15 La. 311; Gladdish v. Godchaux, 46 La.Ann. 1571, 16 So. 451.
 

 Dr. Hawkins relied wholly on his uncorroborated statement to establish his error, but his testimony shows that he knew nothing whatever about the details of the transaction, which was handled entirely by his attorneys and his agents. All that he did was to sign the deed and receive the purchase price. One of his attorneys is dead, but the other attorney, who also signed the deed as a witness, is living and so are the parties who acted as his agents in making the sale, to whom he paid a commission of $1,375.16, or $1.50 per acre for $2,062.76 acres. Neither defendant’s attorney nor his agents were summoned to testify on the question of the alleged error.
 

 No proof whatsoever was offered to establish error on the part of the Crowell
 
 *25
 
 Company. Mr. Evans, who handled the transaction for that company, is dead, and Mr. R. D. Crowell, who testified in the case, did not become general manager of the company until 1923, which was sixteen years after the act of áale was-executed.
 

 There is no contention that fhe notary made any error in drawing the deed, and the sale itself was made according to the governmental subdivisions. There is no reason to suppose that the Crowell Company, the purchaser, did not intend to acquire the acreage called for by the deed. The purchase price was paid by the Crowell Company and received by Dr. Hawkins for the full acreage sold. The agent who made the sale received a commission of $1.50 per acre and the ■ attorneys who handled the transaction received as a commission all that the lands sold for above $20 per acre. And it is certain that they made no error in collecting the full amount of their commissions on the number of acres sold. Dr. Hawkins does not question the ability or the loyalty of his agents or attorneys. On the contrary, he repeatedly stated that he left the entire transaction to be handled by them. He merely signed the deed and received the purchase price after his attorneys had approved everything that was done in connection with the transaction.
 

 In these circumstances, we do not see how it can be conclusively stated that the contracting parties intended anything hut what was written in the contract. Therefore, there can be no reformation of the deed for error. Lattimer’s Heirs v. Gulf Refining Co., 146 La. 249, 83 So. 543.
 

 The only question remaining for decision is the amount of recovery to which plaintiffs are entitled by reason of their eviction from the 39.12 acres that belonged to the minor Haas. The amount of the recovery must be based on the value of the land at the time of its sale by Dr. Hawkins-to the Crowell Company, and not at the time of the eviction. Burrows v. Peirce, 6 La.Ann. 297; Quillin v. Yair, 10 La. Ann. 259; Boyer v. Amet, 41 La.Ann. 721, 6 So. 734.
 

 The sale from Dr. Hawkins to the Crowell Company took place on February 13, 1907. The total acreage sold was 2,062.76 acres, and the sale was made for the lump sum of $57,757.28. Figured on the total acreage sold, the purchase price represented an average price of $28 per acre. The amount claimed by plaintiffs is $1,095.36, being the alleged value at $28 per acre of the 39.12 acres from which they were evicted. Defendant, in his answer, denied that the 39.12 acres were worth $28 per acre, and-averred that they, were not worth as much as $5 per acre in proportion to the value of the total acreage sold by him to the Crowell Company.
 

 The judgment of the trial judge in favor of plaintiffs for $547.68 was based on a valuation of $14 per acre for the 39.12 acres. There is nothing in the record, however, to indicate the method used by the trial judge in arriving at that valuation.
 

 Plaintiffs’ allegation that the lands- from which they were evicted were worth $28 per acre necessarily assumes that the lands were of the uniform quality and value as the other lands conveyed by Dr. Hawkins
 
 *27
 
 in his deed to the Crowell Company. The assumption was not concurred^in by the trial judge, and is not warranted by the record. While Mr. R. D. Crowell, the president and general manager of the plaintiff companies, testified that $28 per acre was the average price for the whole purchase, he frankly admitted that some of the acres purchased were more valuable than the others. He also testified that the Crowell Company was principally interested in purchasing pine lands and not lands on which the hardwoods predominated. And >we do not think it can be, or is, seriously contended by plaintiffs that the swamp lands were.as valuable as the pine lands conveyed by Dr. Hawkins to the Crowell Company.
 

 The 39.12 acres from which plaintiffs were evicted were in the swamp, and the only element of value those lands possessed was the timber growing thereon. The testimony produced on behalf of the defendant shows that practically all the merchantable timber .had been removed from the swamp prior to the sale by the defendant to the Crowell Company, and that what was left was of little or no value.
 

 Charles Duplessis, the first witness for defendant, is 82 years old. He testified that when he first paddled through the swamp in 1869, the water was 12 feet deep. He also testified that he went on the land in the year 1907 with Mobley, a surveyor, and Poole, an estimator, for the purpose of showing them.the corners of the Causey lands. That at that time the lands seemed to have been cut over twice, and that there was practically no timber of a merchantable character left on the tract.
 

 Charles W. Duplessis, a son of Charles Duplessis, testified that in 1907 or 1908 he was hired by Poole and Mobley to go with them into the swamp; that there was no timber in the swamp at that time, except cypress saplings and some túpelo gum; that there was evidence of cypress trees having been cut a year or two previously and of others having been cut many years before, probably before witness’ time; that there was very little merchantable timber left in the swamp; and that there were no trees of a diameter of as much as 12 or 16 inches.
 

 Hardy Clark, a timber man and sawmill owner, was born at Turkey Creek, in the vicinity of the Causey tract and has lived there all his life. He testified that about 30 years before he went into the Causey swamp and got out of there all the cypress timber of any value. When he got through there was nothing but unmerchantable timber left — túpelo gum and small cypress. At that time cypress as small as 12 inches in diameter was cut. Asked what that swamp land was worth at that time per acre, the witness stated that it was worthless without the timber, and that all the merchantable timber had been removed.
 

 James Causey, a son of the original patentee, James C. Causey, 57 years old, was also born at Turkey Creek. He stated that his father, J. C. Causey died in 1925. He testified that he worked in the swamp, hauling cypress timber for Mr. J. D. Johnson in 1902 and 1903; that Avenant Johnson and Mr. Clark were also working in the swamp at that time; that when he quit his job in January, 1904, all the
 
 *29
 
 timber had not been cut; that the cutting operations continued after he left the swamp. He further testified that cypress timber had been taken out of the swamp in 1886 or 1887.
 

 William Clark is well acqainted with the Causey tract in the vicinity of which he was reared. He is engaged in the logging business and logged the Causey swamp at different times. He testified that in 1907 the timber in the Causey swamp was small and not worth much; that the timber had been practically cut out; and that the land was probably worth $4 or $5 an acre. He stated, on cross-examination, that, the last time he was in the swamp was the week before he testified and that he had been “pretty well over that land every time the water was up for the last thirty years.”
 

 Lyman Mizell, a timber estimator of 35 years’ experience, was called as a witness by plaintiffs on the question of the quantity, quality, and value of the timber in the Causey swamp at the time of the sale by Dr. Hawkins to the Crowell Company. On direct examination, Mr. Mizell testified that the swamp part of the Causey tract was worth $28 per acre, which is the exact amount sued for and is the average value of the entire acreage covered by the sale. He admits, however, that in 1907 there was no market value for túpelo gum and that cypress trees as small as 6 to 8 inches were not cut. In other words, that in 1907 timber of that character was not merchantable.
 

 The estimate of Mr. Mizell of the value of the swamp lands in the Causey tract at the time of its sale to the Crowell Company is predicated necessarily on his assumption that the different tracts of land comprising the 2,062.76 acres sold by Dr. Hawkins to the Crowell Company were of uniform quality and value, which the evidence shows they were not. The plaintiffs themselves do not claim that the 39.12 acres from which they were evicted were worth $28 per acre. All that they claim, as shown by article 3 of their petition, is that the entire acreage was sold on the basis of $28 per acre, and that, therefore, they are entitled to a recovery on that basis.
 

 Obviously, the trial judge was not impressed by the testimony of the plaintiffs’ witness as to the value of the swamp lands in the Causey tract at the time of their sale to the Crowell Company, nor are we.
 

 On the whole, in view of the preponderance of testimony showing that the lands in the Causey swamp had been practically denuded of all the-merchantable timber in 1907, and, as a consequence, were of small value, and of the testimony of William Clark, who was particularly well acquainted with the lands, their condition, and value at that time, we have concluded that the plaintiffs are entitled to a judgment of $5 an acre for the 39.12 acreá of which they were divested by the judgment rendered in the suit against the minor Haas.
 

 Plaintiffs have prayed for legal interest from February 23, 1907, the date of the payment of the purchase price by the Crowell Company to Dr. Hawkins. Plaintiffs are entitled to this. Satcher v. Radesich, 153 La. 468, 96 So. 35; Levenberg v. Shanks, 165 La. 419, 115 So. 641.
 

 
 *31
 
 For the reasons assigned, the judgment of the Court of Appeal is annulled and the judgment of the district court is amended by reducing the award of $547.68 to plaintiffs to $195.60, and, as thus amended, the judgment of the district court is affirmed. Plaintiffs to pay costs of appeal. Defendant to pay costs of this proceeding.
 

 HIGGINS, J., absent.