134 So.2d 89 (1961)
CARTER OIL COMPANY, Plaintiff-Appellant,
v.
Dr. R. E. KING, Defendant-Appellee.
No. 9558.
Court of Appeal of Louisiana, Second Circuit.
October 26, 1961.
Cotton & Bolton, William R. Veal, Rayville, for appellant.
E. Rudolph McIntyre, Winnsboro, for appellee.
Before HARDY, GLADNEY and AYRES, JJ.
GLADNEY, Judge.
This suit was instituted by Carter Oil Company to recover the price paid Dr. R. E. King for an oil and gas lease affecting the Southwest Quarter of Section 17, Township 12 North, Range 7 East, containing 160 acres of land situated in Franklin Parish, Louisiana. The action is based on a warranty clause of the lease and upon the general laws of warranty. The demands of plaintiff were resisted by defendant who claims his right to retain the consideration received by him on the ground of mutual *90 error in the land description. He avers the tender of another lease to plaintiff, correctly describing the property to accord with the intent of the parties. After trial, the court rejected plaintiff's demands and ordered a reformation of the lease. Plaintiff has appealed.
The material circumstances pertaining to this litigation are derived from the negotiations between the parties preceding the confection of the invalid lease. In September of 1958, Carter Oil Company wanted to acquire certain mineral leases in Sections 7, 9, 16, 17 and 18 of Township 12 North, Range 7 East of Franklin Parish. The separate tracts of land comprising these leases were marked in red ink for identification on a land ownership map. This was done in plaintiff's Shreveport office, and the map was delivered to Harvey W. Powell with instructions concerning the purchase of said leases. Powell, a lease broker and an attorney at law, then proceeded to Winnsboro, where he discussed with Dr. R. E. King the purchase of a mineral lease on the Southwest Quarter of Section 17. This meeting resulted in a disagreement as to the price and as a consequence of this, Powell returned to Shreveport to obtain approval of the amount asked by Dr. King. About a week later, September 17th, Powell again met with Dr. King, at which time the consideration was agreed upon, and Powell then and there drafted the lease, which was executed between the parties. Payment was made to Dr. King by a draft containing the provision: "Upon Approval of Title But Not Longer Than 5 Days After Sight. Pay to the Order of Dr. R. E. King, $3,200.00."
Subsequently, during the latter part of October, 1958, Carter Oil Company was informed by the Texas Company that it had acquired from D. M. Mettz a lease of 850 acres of Dr. King's property, which acreage included the Southwest Quarter of Section 17. After checking the land records of Franklin Parish plaintiff found the information to be correct and made demand upon defendant for reimbursement.
Tersely stated, plaintiff's position is that it intended to lease from Dr. King the Southwest Quarter of Section 17 and it had no intention of securing a lease on any other property belonging to Dr. King. To the contrary, Dr. King asserts Powell offered to lease the remaining 160 acres in a tract of 1,010 acres owned by him, 850 acres of which had been leased to Mettz.
Careful consideration has been given the testimony and actions of the parties to determine the presence of mutual error, and whether vel non the parties intended to execute a lease upon the Southeast Quarter of Section 19, which was the remaining open or unleased property of Dr. King in the 1,010 acre tract. The issue was correctly stated by the district judge:
"For a determination of the issues in this case, the intention of the parties, Dr. R. E. King, defendant, and Mr. Harvey W. Powell, plaintiff's agent and representative, must be ascertained. If it was the intention of both of said parties, or either of them, to conclude the transaction on the basis of the lease in question covering the lands as described in said lease * * * then, in the opinion of this Court, plaintiff should be granted the relief sought. On the other hand, if both parties intended that the transaction be concluded on the basis of the lease in question covering the 160 acre tract of the 1010 acre tract of the defendant which was `open' or not under lease, then, obviously, there was a mistake or error, mutual and common to both parties, and the reformation of the lease or the correction in the description therein as sought, in the alternative, by defendant should be granted."
It is conceded by counsel for both sides that the sale of a mineral lease is subject to the laws of warranty and upon failure of title a purchaser is entitled to a return of the price. LSA-Civil Code, Arts. 2449, 2501, 2505 and 2506; Tomlinson v. Thurmon et al., 1938, 189 La. 959, 181 So. 458; and Hatch v. Morgan, La.App., 12 So. 2d 476 (2d Cir. 1942).
*91 The rule allowing reformation of error by the parties to a contract is set forth with clarity in the case of Ker, Administrator, et al. v. Evershed et al., 1889, 41 La.Ann. 15, 6 So. 566, 567:
"When the instrument is free from any patent or latent ambiguity, parol evidence cannot be received to vary or contradict it.
"Courts of equity, however, have established a special branch of jurisdiction under which, when it is made clearly to appear that through fraud or error the written instrument has been made to express a different purpose from that which the parties had agreed on and intended to embody therein, such mistake may be corrected, and the writing may be reformed to express the real intention of the parties.
"But in this last case both reason and authority require that before such relief can be afforded there must be very clear proof of the different antecedent agreement, and of the error in committing it to writing."
The foregoing principle has been cited with approval in Rodgers v. S. H. Bolinger Company, Ltd., 1921, 149 La. 545, 89 So. 688; Standard Oil Company of Louisiana v. Futral et al., 1943, 204 La. 215, 15 So.2d 65; Weber v. H. G. Hill Stores, Inc., 1946, 210 La. 977, 29 So.2d 33; and Southwest Gas Producing Company, Inc., et al. v. Hattie Brothers et al., 1956, 230 La. 339, 88 So.2d 649. In Weber v. H. G. Hill Stores, Inc. appears a quotation from Hearne v. Marine Insurance Co., 20 Wall. 488, 22 L.Ed. 395, this excellent statement is found:
"`The reformation of written contracts for fraud or mistake is an ordinary head of equity jurisdiction. The rules which govern the exercise of this power are founded in good sense and are well settled. Where the agreement as reduced to writing omits or contains terms or stipulations contrary to the common intention of the parties, the instrument will be corrected so as to make it conform to their real intent. The parties will be placed as they would have stood if the mistake had not occurred.'
"`The party alleging the mistake must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. The mistake must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. A mistake on one side may be a ground for rescinding, but not for reforming, a contract. Where the minds of the parties have not met there is no contract, and hence none to be rectified.'" [210 La. 977, 29 So.2d 37]
To succeed in correcting the error the proponent must meet certain requirements of proof, as was observed in Reynaud v. Bullock, 1940, 195 La. 86, 196 So. 29, 34:
"* * * The error or mistake must be mutual. Hello World Broadcasting Corp. v. International Broadcasting Corp., 186 La. 589, 173 So. 115; Crowell & Spencer Lumber Co. v. Hawkins, 189 La. 18, 179 So. 21; Topps v. North British & Mercantile Ins. Co., La.App., 148 So. 470; 13 Corpus Juris 373, Section 254; 13 Corpus Juris 520, Section 481; 53 Corpus Juris 941, Sections 59 and 60; 23 Ruling Case Law 327, Section 20; 12 American Jurisprudence 624, 625, Section 133; and Article 1826, Revised Civil Code. The burden is on the one seeking the reformation to prove the error (Metcalfe v. Green, 140 La. 950, 74 So. 261; White v. Myane, 10 La.App. 195, 120 So. 650; Crais v. Castaing, 13 La.App. 395, 128 So. 300; Coussons v. Smythe, La.App., 178 So. 657), and he must carry the burden by clear, and the strongest possible, proof. Palangue v. Guesnon, 15 *92 La. 311; Dickson v. Dickson, 36 La. Ann. 870; Ker v. Evershed, 41 La. Ann. 15, 6 So. 566; Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290; Gladish v. Godchaux, 46 La.Ann. 1571, 16 So. 451; Chaffe v. Minden Lumber Co., 118 La. 753, 43 So. 397; Waller v. Colvin, 151 La. 765, 92 So. 328; and Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, 92 So. 855." Southwest Gas Producing Co. v. Hatties Brothers, 1956, 230 La. 339, 88 So.2d 649.
Following his examination of the testimony of the two principal witnesses, Powell and Dr. King, the trial judge decided the position of the defendant was well taken, and rejected the demands of the plaintiff. His findings as disclosed in a written opinion, show he relied, first, upon testimony of the defendant that he told Powell 850 acres of his property were leased and 160 acres thereof remained open, and because of such information the judge apparently assumed Powell knew the identity of the 160 acres. We take note, however, that Dr. King disclaimed knowledge of or familiarity with land descriptions and testified he merely glanced at the map shown him by Powell. Dr. King, so it appears to us, relied upon Powell to identity the property not leased. Powell insists he intended to purchase only the Southwest Quarter of Section 17, and was not authorized to acquire the Southeast Quarter of Section 19. He did not deny that Dr. King told him he had leased 850 acres, but says in response to his direct questions that Dr. King identified the Southwest Quarter of Section 17 as being the "open" land. Next, the judge discredited Powell's testimony to the effect he had not previously examined the land records and was not familiar with the Mettz lease. The Mettz lease was executed by Dr. King on April 22, 1958, but was not filed of record until July 18, 1958. Powell testified that when he first was given the assignment by the Carter Oil Company he was informed by its Land Department that the records of Franklin Parish had been checked through July 10, 1958, and the plat given him had been prepared on that basis. The judge noted as significant that Powell failed to account for his failure to check the records after July 18th, at which time the Mettz lease was placed on record. Further, he pointed out that the draft permitted a title examination before payment. We cannot accept the finding so made for it excludes consideration of the fact that plaintiff was under no legal compulsion to make an independent search of the records prior to the payment of the draft. The Carter Oil Company had the legal right to rely upon the warranty clause contained in its lease. We are of the opinion that in the absence of strong rebutting evidence the positive testimony of Powell that he did not know what property was included in the Mettz lease prior to September 17th, should prevail.
Powell's testimony that he intended to lease only the Southwest Quarter of Section 17 is corroborated by the map and the testimony of one of plaintiff's officials. The map plainly discloses the limitation of authority imposed upon Powell which prohibited him from leasing any of Dr. King's property other than the Southwest Quarter of Section 17. William M. Selvidge testified as to the extent of the authority of Powell. The judge a quo, however, was of the opinion that the map and testimony of Selvidge did not contribute any evidence of importance and regarded the map and testimony of Selvidge as hearsay and self-serving. In this respect, we feel that our colleague fell into error. The map was identified by both Powell and Dr. King as the one used in the negotiations leading up to the lease. It is not denied that when the map was first given to Powell it was marked to show the leases intended for purchase. The map is relevant for the purpose of showing intention. The testimony of Selvidge was independent, direct testimony. This witness was in position to know what acreage was wanted by his company and what was not, and necessarily his testimony has a bearing on the intent of plaintiff company. It is a recognized rule of evidence *93 that "statements of design, intent, motive, and feeling are always admissible where such design, intent, feeling, or motive is the very fact in issue to be proved." Modern Trial Evidence, Conrad, Vol. 1, § 575, page 470. Additional corroboration of Powell's testimony, so we think, is to be found in the testimony of Zella Cottingham, who testified that during the confection of the lease on September 17, 1958, Powell was careful to check and recheck the land description thereof with the aforementioned map.
The conclusion is inescapable that the defendant has failed to sustain the burden of establishing mutuality of error by clear and the strongest possible proof. It is obvious that both Powell and Dr. King understood at the time of the drafting of the lease that there was no encumbrance upon the property described therein. The record, nonetheless, discloses the Carter Oil Company intended to lease only the Southwest Quarter of Section 17 of Dr. King's property and Dr. King understood Powell intended to buy the 160 acres not included in the Mettz lease. That error was not mutual and does not permit of reformation to include the Southeast Quarter of Section 19, which Carter Oil Company never had any intention of leasing.
Plaintiff has also in this proceeding claimed legal interest from September 17, 1958, the date of the payment of the purchase price of the lease by plaintiff to Dr. King. Interest must be allowed under the authority of Satcher, et al. v. Radesich, et al., 1923, 153 La. 468, 96 So. 35; Levenberg v. Shanks, et al., 1928, 165 La. 419, 115 So. 641; and Crowell & Spencer Lumber Company, Ltd., et al. v. Hawkins, 1938, 189 La. 18, 179 So. 21, 25.
It follows from our findings and the principles of law hereinabove set forth, therefore, that the judgment from which appealed should be annulled, reversed and set aside, and recast to read as follows:
It is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, the Carter Oil Company and against the defendant, Dr. R. E. King, in the true and full sum of $3,200, with interest thereon at the rate of 5% per annum from September 18, 1958, until paid.
It is further ordered, adjudged and decreed that the demands of the defendant, Dr. R. E. King, as plaintiff in reconvention, including the alternative reconventional demand for a correction of the description of the land as set out in that certain oil, gas and mineral lease of Dr. R. E. King to the Carter Oil Company, dated September 17, 1958, be and the same are rejected.
It is further ordered, adjudged and decreed that the defendant, Dr. R. E. King, be cast with all costs of this suit.